| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>RUTH MCKENNA and JOE MCKENNA<br>317 East Prune Avenue, Unit A<br>Lompoc, CA 93436<br><br><br><br><br><br>☒ *Respondent appearing without attorney*<br>☐ *Attorney for Respondent:* | FOR COURT USE ONLY |
|---|---|

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA · NORTHERN DIVISION**

| In re:<br><br>JOE ANGUS MCKENNA and<br>RUTH ALLISON MCKENNA<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 9:24-bk-10717-RC<br>CHAPTER: 13<br><br>**RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT**<br><br>DATE: 04/22/2025<br>TIME: 9:00 am<br>COURTROOM: 201<br>PLACE: 1415 State Street<br>Santa Barbara, CA 93101 |
|---|---|
| **Movant:** HOLLYVALE RENTAL HOLDINGS, LLC | |

**Respondent:**   ☒ Debtor   ☐ trustee   ☐ other:

> NOTE REGARDING FILING AND SERVICE OF RESPONSE, EXHIBITS AND DECLARATIONS:
>
>   A copy of the Response, exhibit(s) and declaration(s) must be served upon:
>
>   (1) Movant's attorney (or Movant, if Movant does not have an attorney);
>   (2) the trustee; and
>   (3) the judge who presides over this bankruptcy case.
>
>   Then the document must be filed with the court.

1. ☐ **NONOPPOSITION**
   The Respondent does not oppose the granting of the Motion.

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 1                                    **F 4001-1.RFS.RESPONSE**

2. ☐ **LIMITED OPPOSITION**

   a. ☐ Respondent opposes the Motion only to the extent that it seeks immediate relief from stay. Respondent requests that no lock out, foreclosure, or repossession take place before (*date*): _____ and the reason for this request is (*specify*):

   b. ☐ As set forth in the attached declaration of the Respondent or the Debtor, the motion is opposed only to the extent that it seeks a specific finding that the Debtor was involved in a scheme to hinder, delay or defraud creditors.

     The Debtor:

     (1) ☐ has no knowledge of the Property.

     (2) ☐ has no interest in the Property.

     (3) ☐ has no actual possession of the Property.

     (4) ☐ was not involved in the transfer of the Property.

   c. ☐ Respondent opposes the Motion and will request a continuance of the hearing since there is an application for a loan modification under consideration at this time. Evidence of a pending loan modification is attached as Exhibit _____.

3. ☒ **OPPOSITION:** The Respondent opposes granting of the Motion for the reasons set forth below.

   a. ☒ The Motion was not properly served (*specify*):

     (1) ☒ Not all of the required parties were served.

     (2) ☒ There was insufficient notice of the hearing.

     (3) ☐ An incorrect address for service of the Motion was used for (*specify*):

   b. ☒ Respondent disputes the allegations/evidence contained in the Motion and contends as follows:

     (1) ☒ The value of the Property is $ 848,900.00 _____, based upon (*specify*): Realtor.com

     (2) ☒ Total amount of debt (loans) on the Property is $ 200,000.00 _____.

     (3) ☐ More payments have been made to Movant than the Motion accounts for. True and correct copies of canceled checks proving the payments that have been made are attached as Exhibit _____.

     (4) ☐ There is a loan modification agreement in effect that lowered the amount of the monthly payments. A true and correct copy of the loan modification agreement is attached as Exhibit _____.

     (5) ☐ The Property is necessary for an effective reorganization. Respondent filed or intends to file a plan of reorganization that requires use of the Property. A true and correct copy of the plan is attached as Exhibit _____.

     (6) ☐ The Property is fully provided for in the chapter 13 plan and all postpetition plan payments are current. A true and correct copy of the chapter 13 plan is attached as Exhibit _____ and proof that the plan payments are current through the chapter 13 trustee is attached as Exhibit _____.

     (7) ☐ The Property is insured. Evidence of current insurance is attached as Exhibit _____.

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014     Page 2     F 4001-1.RFS.RESPONSE

(8) ☐ Movant's description of the status of the unlawful detainer proceeding is not accurate.

(9) ☒ Respondent denies that this bankruptcy case was filed in bad faith.

(10) ☒ The Debtor will be prejudiced if the Nonbankruptcy Action is allowed to continue the nonbankruptcy forum.

(11) ☒ Other (specify):
Debtors are victims of duel tracking, fraud, wrongful foreclosure, and many statutory violations.

c. ☒ Respondent asserts the following as shown in the declaration(s) filed with this Response:

(1) ☐ The bankruptcy case was converted from chapter ___ to chapter ___.

(2) ☐ All postpetition arrearages will be cured by the hearing date on this motion.

(3) ☐ The Property is fully provided for in the chapter 13 plan and all postpetition plan payments
☐ are current, or ☐ will be cured by the hearing date on this motion.

(4) ☒ The Debtor has equity in the Property in the amount of $ 648,900.00 .

(5) ☒ Movant has an equity cushion of $ 648,900.00 or 76.44 % which is sufficient to provide adequate protection.

(6) ☒ The Property is necessary for an effective reorganization because (specify):
It is an income producing property, and the major source of Debtors' income. Debtors and their tenants are elderly people. If the Debtors and the tenants are evicted, they would all become homeless.

(7) ☒ The motion should be denied because (specify):
The Debtors filed their Ch13 bankruptcy petition before the foreclosure sale was completed. Movant admits that the foreclosure sale was completed at 1:55 PM on June 26, 2024. Debtors filed at 1:50 PM.

(8) ☒ An optional memorandum of points and authorities is attached in support of this Response.

4. **EVIDENCE TO AUTHENTICATE EXHIBITS AND TO SUPPORT FACTS INSERTED IN THE RESPONSE:**

Attached are the following documents in support of this Response:

☒ Declaration by the Debtor            ☐ Declaration by the Debtor's attorney
☐ Declaration by trustee               ☐ Declaration by trustee's attorney
☐ Declaration by appraiser             ☒ Other (specify): Attached Exhibits.

Date: 04/08/2025

_____
Printed name of law firm for Respondent (if applicable)

Joe McKenna
_____
Printed name of individual Respondent or attorney for Respondent

_____
Signature of individual Respondent or attorney for Respondent

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 3                          F 4001-1.RFS.RESPONSE

| | | FOR COURT USE ONLY |
|---|---|---|
| 1 | **RUTH MCKENNA and JOE MCKENNA** <br> 317 East Prune Avenue, Unit A <br> Lompoc, CA 93436 <br> 805-717-1364 | |
| 2 | | |
| 3 | | |
| 4 | **UNITED STATES BANKRUPTCY COURT** <br> **CENTRAL DISTRICT OF CALIFORNIA** <br> **NORTHERN DIVISION** | |
| 5 | | |
| 6 | | |
| 7 | **In Re:** <br> **JOE ANGUS MCKENNA and** <br> **RUTH ALLISON MCKENNA,** <br>                        **Debtors.** | |
| 8 | | |
| 9 | | |
| 10 | | Chapter 13 |
| 11 | | Case No. 9:24-bk-10717-RC |
| 12 | **DECLARATION OF JOE MCKENNA** | |
| 13 | | Hearing Date:  April 22, 2025 <br> Time:  9:00 AM |
| 14 | | |

15

**DECLARATION OF JOE MCKENNA**

I, JOE MCKENNA, declare under penalty of perjury as follows:

1. I am a competent adult and one of the Debtors in this case.

2. My wife and Co-Debtor, RUTH MCKENNA, and I filed our Chapter 13 bankruptcy petition at **1:50** PM on June 26, 2024.

3. OLIVIA REYES, agent for Movant and who "managed every aspect of the property from Movant's acquisition to now" (See REAL PROPERTY DECLARATION paragraph "1.b."), **ADMITS** that the Movant purchased the subject property at **1:55 PM** on June 26, 2024.   Movant's foreclosure sale purchase of our home was **five minutes after** Debtors had filed their Ch13 bankruptcy petition.  (See paragraph "1." of the Supplemental Declaration of OLIVA REYES.)  The **automatic stay** was in place at **1:50 PM** on June 26, 2024.  The foreclosure sale should have been rescinded as soon as the Carrington Foreclosure Services Trustee / Director, TAI ALAILIMA, got

1   notice of Debtors' Ch13 bankruptcy filing in this case. Carrington Foreclosure Services was listed as

2   a creditor in the mailing list in this case. After a month and a half of knowing about this case,

3   Carrington Foreclosure Services never told Movant about this significant legal situation, which

4   Debtors thought would have for sure been disclosed by Movant. Debtors hired the law firm of

5   MICHAEL J. FOX to get information on the foreclosure sale and to reason with the Carrington

6   foreclosure trustee, but more on that later.

7   4. Once the Debtors found out that the foreclosure sale had been completed, the Debtors were

8   advised by a family friend, who used to be an attorney for 17 years, that we didn't own the subject

9   property anymore and that it would be of no use to continue filing the remaining bankruptcy

10  documents and the schedules plus the Ch13 plan in this case. We had no house and no mortgage at

11  that point. Afterwards we talked to a licensed attorney who was also my former employer, GARY

12  DUNLAP, who disagreed with my former attorney friend and GARY told me to fight title by filing

13  another Ch13 bankruptcy to stop the transfer of title. So, we filed another Ch13 bankruptcy petition

14  with this court on August 13, 2024. The Trustees Deed Upon Sale (TDUS) was recorded by the

15  foreclosure trustee with the Santa Barbara County Recorder on August 16, 2024. This was three days

16  after our filing of the next August Ch13 petition. This was when the two Carrington entities knew we

17  had filed for Ch13 bankruptcy again, but they never told Movant, and they went ahead with recording

18  the TDUS. We Debtors did our own research and found out that the August 13, 2024 Ch13

19  bankruptcy filing might not help us after all. So, GARY DUNLAP advised me to start working on a

20  civil complaint for wrongful foreclosure and to include many other causes of action. GARY was

21  battling cancer during all this time and my longtime friend for decades eventually passed away

22  October 27, 2024. I am still working on the civil complaint and I will hopefully file and serve it

23  soon. Once filed, I will file a motion for a preliminary injunction to stay Movant's unlawful detainer

24  action filed against the Debtors. However, if Debtors prevail in this motion for relief from the

25  automatic stay, the Movant's action for unlawful detainer will have to be dismissed with prejudice, as

26  title to the subject property will have to revert back to the Debtors, because of the mandatory

27  rescission of the foreclosure sale.

28  5. Debtors tried to get a loan modification from creditor Carrington Mortgage Services (CMS) from

1  the time of the notice of default until the time of the alleged foreclosure sale, but Debtors would first

2  like to discuss the happenings on the day of the alleged foreclosure sale. It's very interesting.

3  6.   Debtors checked the Carrington Foreclosure Services (CFS) foreclosure sale website the days

4  before the foreclosure sale auction date and time and Debtors were led to believe that CMS and CFS

5  would postpone the foreclosure sale because of ongoing loan modification negotiations, with Debtors

6  waiting for the loan modification application. So, on the day of the sale, June 26, 2024, Debtors were

7  surprised and realized that the sale was still scheduled. Debtors then had to, and did, put together an

8  emergency Chapter 13 bankruptcy petition (this case). Once filed, the very powerful automatic stay

9  would come into effect immediately. Any foreclosure sale after the bankruptcy filing would have to

10  be rescinded.

11  7.   During the trip to the bankruptcy court in Santa Barbara, CA, Debtors had some unfortunate

12  delays, but were still able to be timely. To sum it up, Debtors had to borrow a friend's vehicle which

13  took time, and then they had to wait in line to get gasoline, and then they sped down to Santa Barbara

14  and got stopped by a CHP officer for going too fast (luckily just getting a warning). The Debtors

15  explained to the officer that they were in a hurry to file their bankruptcy petition. Then after much

16  delay, Debtors finally got to the bankruptcy court. The petition was processed by the clerk, and

17  Debtors eventually filed their Chapter 13 bankruptcy petition at 1:50 PM on June 26, 2024. Please

18  see Exhibit A.

19  8.   After about 3:15PM, on June 26, 2024, the Debtors got numerous calls from many law firms.

20  They all said they got word that Debtors' house sold at a foreclosure auction for $400,000. They also

21  knew that Debtors only owed CMS about $200,000 on a First Deed of Trust (FDOT). Then they all

22  told Debtors that the Debtors had about $200,000 in "surplus funds" coming to Debtors, and they

23  could help collect it for a fee. They all must have subscribed to some sort of foreclosure auction

24  reporting service(s) that was quick to report, which Debtors found out later was PropertyRadar.

25  PropertyRadar has many subscribers. They all said that the house was sold at auction at 2:51 PM.

26  Debtors got the same 2:51 PM sale time news from everyone who called that seminal 26th day of

27  June 2024. There were about 14 calls to the Debtors that day, and a lot more calls the next several

28  days, even weeks later, and months later. Debtors were amazed at how they all knew so quickly, and

1  that they all had Debtors' phone numbers.  Apparently there are many outfits that specialize in

2  helping people "recover" their surplus funds — The "Surplus Funds Brigade" as Debtors jokingly

3  call them.  Actually they are mostly a bunch of vultures, but not all.  Each law firm said they would

4  only charge Debtors anywhere between one-tenth and one-third of the amount to help Debtors get

5  their surplus funds.  That would mean Debtors paying out $20,000 to $66,666 for doing something

6  Debtors could easily do themselves in less than an hour.  It's a matter of just filling out a simple three

7  page form, getting it notarized, and sending it in with copies of the Debtors' IDs.  Debtors explained

8  to each law firm that they had filed a Chapter 13 bankruptcy petition at **1:50 PM**, and that the

9  foreclosure sale had to be eventually rescinded.  So, there would be no surplus funds.

10  9.   Debtors did however hire the law firm of Attorney Michael J. Fox, and Debtors were working

11  with Mr. Fox's legal assistants CALVIN CHADWICK and DIANA KEANE.  CALVIN and DIANA

12  had several emails and telephone exchanges with the CFS foreclosure trustee, TAI ALAILIMA.

13  They both told Mr. Alailima that their records show the trustee's sale occurred at **2:51 PM**, and they

14  showed proof of when Debtors filed their bankruptcy petition.  Then <u>after</u> MR. ALAILIMA found

15  out that the Debtors filed their bankruptcy petition at **1:50 PM**, Mr. Alailima made a ***newly***

16  ***discovered*** claim that the foreclosure sale of Debtors property happened at **1:49 PM**, June 26, 2024,

17  not **2:51 PM** as publicly reported by PropertyRadar.  Mr. Alailima fraudulently changed the time the

18  sale was completed to just one minute before the Debtors filed their bankruptcy petition.  Mr.

19  Alailima had to pick a time that was as close to the real time as possible (2:51 PM), yet make it

20  appear that the Debtors were too late in getting their automatic stay from the bankruptcy court.  Mr.

21  Alailima knew or had reason to know Debtors would have to fight this issue in court, probably

22  thinking Debtors would never be able to take legal action against him and his company.  Please see

23  the email exchange between those at the Michael B. fox law firm and Tai Alailima.  Please see

24  Exhibit B.

25  10.   Mr. Alailima went ahead and ran with the lie that the foreclosure sale happened at 1:49 PM.  He

26  eventually signed a Trustees Deed in favor of Movant, HOLLYVALE RENTAL HOLDINGS, LLC

27  (HRH), giving HRH a $448,900 windfall, and a $448,900 loss for the Debtors.  ($848,900 property

28  value -$400,000 sale price = $448,900 (See Exhibit C)).  There could be a possible kickback

1    involved, which needs investigation. If Petitioners would have filed their bankruptcy petition at 1:49

2    PM., somebody at CFS would probably claim the sale happened at 1:48 PM; and with a 1:48 PM BK

3    filing their claim would be a 1:47 PM foreclosure sale, and so on, always one minute before. So the

4    Debtors would never be timely under this scheme. If Debtors were not defrauded, Debtors would be

5    in bankruptcy court at this time, paying plan payments.

6    11.    Giving Mr. Alailima the benefit of the doubt, just for the sake of argument that Mr. Alailima

7    truly believed the time of foreclosure sale was complete at 1:49 PM, it could be that his or his agents'

8    clock was probably too slow in calibration; or, the bankruptcy court's clock was too fast. There is a

9    question of whether or not Mr. Alailima's or his agents' clock was synchronized with the bankruptcy

10    court's clock. No two clocks work identically, and no two clocks can be perfectly synchronized. The

11    bankruptcy court's time calibration is independent of the National Institute of Standards and

12    Technology's (NIST's) time. The bankruptcy courts' time is set independently by its central

13    computer in Washington DC and all bankruptcy courts across the nation use that same clock's time.

14    NIST time is considered by many to be the gold standard of time. If you go to the NIST website you

15    can see how much your device/clock is off. Everyone's device/clock is off to some degree. If your

16    clock is too slow by one second, the true time of 1:50 PM would show as 1:49 PM until another

17    second goes by. So, the foreclosure trustee's time of 1:49 PM is ambiguous, suspicious, and is

18    subject to debate. This fraudulent situation has caused Debtors damages of about $448,900 in lost

19    equity, and about $36,000 in future annual rental income. In a close call situation, the court should

20    rule in favor of the party who would be harmed the most, which would be the Debtors. If Movant

21    loses this case, Movant would just get all its money back with no significant loss, and it would have

22    causes of action against the two Carrington entities for attorneys fees and costs.

23    12.    If you were to take an average of the time Movant's foreclosure sale time of 1:55 PM and TAI

24    ALAILIMA'S foreclosure sale time of 1:49 PM, it would be 1:52 PM. So in this case Debtors filed

25    their Ch13 bankruptcy two minutes early. If you were to take an average of 1:55 PM, 1:49 PM, and

26    PropertyRadar's sale time of 2:51 PM, it would be 2:12 PM. So Debtors filed their Ch13 bankruptcy

27    22 minutes early. In each average foreclosure sale time, Debtors beat the clock, and the automatic

28    stay was in place before any of the average sale times.

13.    Now Debtors would like to discuss how CMS mistreated and tricked the Debtors.  In 2020 through 2023, Debtors were having severe health issues, which negatively affected their income, and they fell behind in their mortgage payments.  During the whole year of 2022, which was in the middle of the pandemic, Debtors' tenant in Unit B decided not to pay her rent.  Debtors eventually had to file an unlawful detainer action against that tenant.  This also contributed to Debtor's financial troubles.  Debtor's reluctantly settled the case with a loss of about $11,000, just to stop the bleeding.  Coincidentally, this amount was about how much Debtors were behind in their mortgage payments at that point in time.

14.    About February 2024 Debtors were approached by CMS about a possible loan modification.  Debtors agreed to participate in the process.  The Debtors were waiting to receive a loan modification application but never received one.  Some time went by, and CMS produced and mailed an offer for a loan modification.  This is without CMS even knowing Debtors' financial situation.  Still no loan modification application was sent.

15.    Debtors did not sign the loan modification agreement as the loan payments were too high as a result of CMS's non-compliance with modification guidelines.  Debtors were told by CMS that it would review the matter again and, as long as the matter was being reviewed, there would be no foreclosure of their property.  The representative that Debtors spoke with never indicated that any pending foreclosure would proceed.  Debtor's asked again for an application.  As previously stated, CMS and CFS went ahead with the foreclosure sale.  They were engaging in duel tracking.

16.    Debtors are almost finished with the state civil complaint against CMS, CFS, HRH, and the foreclosure trustee, Tai Alailima.  So far there are 16 legal causes of action against the defendants.

17.    Our electrical power got shut off, and I was prevented to pay my utility bill because the subject property is technically in Hollyvale Rental Holdings (HRH) name.  I was told I need a lease agreement with HRH.  I was also told that the City Utilities needed proof that my latest bankruptcy case was dismissed.  Someone from HRH contacted someone in the Utility/Legal department and claimed that my wife and I don't own the subject property and that we were living in it illegally.  This is not true.  It may be true that county records show that the property is in HRH's name but the title to the property is in litigation.  So the HRH person who told the city about the title left out the fact that a

1   court order is needed to determine who really owns my property.  HRH is in battle with me and my

2   wife for title to the property.  HRH thinks it needs to cheat to win.  HRH was hoping that city

3   personnel are mindless robots and will believe any lie and follow strict procedural rules.  HRH

4   wanted to shut us down so we can't fight.  Thank God my wife and I had discussions with the City of

5   Lompoc's attorney, and he felt sorry for us and he told the utility department to allow us to pay our

6   bill without a lease agreement from HRH, and our power got turned back on.

7   18.  This action arises out of the worst global pandemic in about 100 years.  Businesses were shut

8   down, some forever.  Debtors' business was forcibly shut down for six months in 2020.  People were

9   urged to stay at home.  People were getting infected with Covid-19 all over the world.  In the US, the

10  majority of people were suffering financially.  Debtors were among those who were greatly affected

11  by the pandemic in many ways, i.e., physically, mentally, and financially.  The government created

12  new laws and financial assistance for homeowners.  The new laws and assistance helped many people

13  in the US, but only partially.  However, some people and some financial institutions took selfish

14  advantage of the pandemic situation.  Carrington Mortgage Services (CMS) was one of them.

15  Human lives were affected by CMS's actions.  It has recently come to light that, in their quest to

16  foreclose on properties as quickly as possible, to gain more assets, CMS and other lenders have been

17  acting outside of the law in its foreclosure practice.

18  19.  Specifically, CMS has been found guilty of many wrongdoings during our nation's time of great

19  turmoil.  Instead of giving back to the community, and helping the people who made the CMS

20  owners rich, CMS took advantage of the horrific situation.  CMS added salt to the wounds.

21  Carrington Mortgage Services (CMS) has been involved in several lawsuits, including:

22  <u>CONVENIENCE FEES</u>

23      In 2020, a class action lawsuit was filed against Carrington Mortgage Services for charging

24  convenience fees for online and phone payments.  The fees were not part of the borrowers' mortgage

25  agreements and were alleged to violate state and federal consumer protection laws.  The settlement

26  included a common fund of $18,181,898.95, which represented 35% of the convenience fees

27  collected from 2016–2021.

28

## FALSE CLAIMS ACT

Michelle Calderon, a former Carrington employee, sued the company for allegedly making false representations to the U.S. Department of Housing and Urban Development (HUD). Calderon claims that Carrington made these false statements when certifying residential mortgage loans for insurance coverage from the Federal Housing Administration (FHA).

## CONSUMER FINANCIAL PROTECTION ACT

In 2022, the Consumer Financial Protection Bureau (CFPB) took action against Carrington Mortgage Services for deceptive practices and wrongly charged fees. The CFPB found that Carrington failed to implement many protections for borrowers who were experiencing financial hardship during the COVID-19 pandemic.

## MACHOLTZ vs. CARRINGTON MORTGAGE SERVICES, LLC

This case is about whether the terms of a Loan Modification Agreement (LMA) bind successor lenders and servicers. CMS wrongfully foreclosed on the Debtor, and it was found guilty of many other wrongdoings.

## THOMAS vs. CARRINGTON MORTGAGE SERVICES, LLC

This case is about whether Carrington Mortgage Services fully complied with the substantive requirements of a regulation.

There are numerous other cases against CMS, but there is no need to list all of them. The Debtors just wanted the court to know a little more about what the Debtors have been dealing with. 20. Financial institutions taking advantage of people is not new. There was a large increase in deceptive practices after the financial meltdown of 2008. Thereafter, on October 4, 2010, members of the California Democratic Congressional Delegation wrote a letter to Eric Holder, United States Attorney General; Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System; and John Walsh, Acting Comptroller of the Office of the Comptroller of the Currency, urging them "to investigate possible violations of law or regulations by financial institutions in their handling of delinquent mortgages, mortgage modifications, and foreclosures." The letter was supported by numerous California case studies, several of which described scenarios that were substantially similar to the wrongful conduct inflicted on Debtors by CMS.

21. Ever since, the national press has been reporting stories of numerous illegalities in the policies, practices and procedures of lenders, and their employees and agents employed and retained to process foreclosures. The evidence is overwhelming that CMS and other lenders have been acting outside of the law since the last two crises began, which were the 2008 financial meltdown and the covid-19 pandemic. This action is a prime example of CMS and its agents' wrongful and illegal conduct in their greed for property and fees at any cost without any regard to the rights of homeowners and borrowers.

22. Debtors on the other hand are just a couple of elderly Christian folks. The Debtors unfortunately have preexisting medical conditions, and the pandemic just intensified their medical problems. The pandemic has also caused Debtors severe financial harm over the last several years, which gradually caused them to fall behind in their mortgage payments. In an effort to help boost their income, a year and a half ago, Debtors started a care center for homeless people, with elderly men in Unit A and elderly women in Unit B, all rooms furnished. There is a homeless crisis in Lompoc, and Debtors are just trying to do their part to help the community. Debtors have three homeless people they took in as tenants, and they have room for two more. Debtors have been working with Good Samaritan Shelter to get homeless people into their home, and Good Samaritan Shelter helps subsidize the tenants' rent. Debtors would especially be willing to take in two elderly ladies who were displaced by the recent Los Angeles County wild fires. Debtor, Ruth McKenna, is also an IHSS provider, and she is taking care of one of the tenants who is a 75 year old man, with multiple issues. Debtor, Joe McKenna, is a paralegal by trade, who keeps up with his MCLEs, mainly helping attorneys who help low income people. The Debtors have three cats that were born and raised on the subject real property, and they had two rescue dogs that died, but they are currently looking for another rescue dog. When Debtors get the foreclosure sale set aside, the Debtors plan on getting a reverse mortgage to pay off whatever amount, if any, the court deems proper.

23. Movant mentions three Ch13 bankruptcies filed about seven years ago. Debtors had to file those bankruptcies because of CMS'S penchant for engaging in duel tracking and other fraudulent activities. Eventually Debtors got a loan modification and everything was fine until the pandemic.

1    I declare under penalty of perjury under the laws of both the State of California and the

2   United States of America that the foregoing facts are true and correct.  Executed on April 8, 2025, in

3   Lompoc, California.

4

5

6   Dated: April 8, 2025

    JOE MCKENNA

7

8   /////

9   /////

10  /////

11  /////

12  /////

13  /////

14  /////

15  /////

16  /////

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

# EXHIBIT A

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 13 of the United States Bankruptcy Code, entered on 06/26/2024
at 1:50 PM and filed on 06/26/2024.

**Joe Angus McKenna**
317 #A E. Prune Ave.
Lompoc, CA 93436
SSN / ITIN: xxx-xx-6946
*dba* **McKennas Legal Documents**

**Ruth Allison McKenna**
317 #A E. Prune Ave.
Lompoc, CA 93436
SSN / ITIN: xxx-xx-7377

The bankruptcy trustee is:

**Elizabeth (ND) F Rojas (TR)**
Valley Executive Tower
15260 Ventura Blvd., Suite 830
Sherman Oaks, CA 91403
818-933-5700

The case was assigned case number 9:24-bk-10717-RC to Judge Ronald A Clifford.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 1415 State Street,, Santa Barbara, CA 93101-
2511.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

**EXHIBIT B**

**From:** Calvin Chadwick <foxmjlawc@gmail.com>
**Sent:** Tuesday, July 2, 2024 3:47 PM
**To:** Tai Alailima <Tai.Alailima@carringtonfcl.com>
**Cc:** Diana Keane <diana@foxmjlaw.com>
**Subject:** Re: URGENT: RE: TS# 23-29934 / BK Filing To Stop Sale

Hello Tai,

Our records indicate that the sale occurred at 2:51pm.  Please provide documentation to support that the sale occurred at 1:49 so we can show our clients the time stamp.  beings that they were one minute off, is there any way you will consider rescinding the sale as our clients have every intention to follow through with the terms of the bankruptcy.

On Tue, Jul 2, 2024 at 2:59 PM Tai Alailima <Tai.Alailima@carringtonfcl.com> wrote:
Per our records from the auctioneer the sale was completed at 13:49. The sale will not be rescinded.

**Tai Alailima | Director, Trustee Operations**
Carrington Foreclosure Services, LLC
1600 South Douglass Road, Suite 140
Anaheim, CA 92806
Office: (949) 517-6410
Cell: (949) 943-0877
Fax: (949) 534-9551

# EXHIBIT C



< Back | Lompoc, CA  ✕ | View as owner



What's your equity? (It's easy to find ou

Off Market

**6,098** sqft lot

317 E Prune Ave, Lompoc, CA 93436

🏠 **Single Family**
Property type

📅 **$175K in 2010**
Last sold

View as owner    Share

**US Military & Veterans $100,000 Home Giveaway. See Off. Rules**

**Interested in selling 317 E Prune Ave?**

Estimated value*

**317 E Prune Ave, Lompoc, CA 93436**

• **Est. $848,900**

**6,098** sqft lot

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

711 East Ocean Avenue, Lompoc, CA 93436

A true and correct copy of the foregoing document entitled: **RESPONSE TO MOTION REGARDING THE AUTOMATIC STAY AND DECLARATION(S) IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __04/08/2025__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Elizabeth (ND) F Rojas (TR)    cacb_ecf_@ch13wla.com

United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __04/08/2025__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __04/08/2025__ | Samuel Bosworth | |
| Date | Printed Name | Signature |

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

SAM CHANDRA, ATTY
LAW OFFICES OF SAM CHANDRA, APC
710 S. MYRTLE AVE., #600
MONROVIA, CA 91016

THE HONORABLE RONALD CLIFFORD, III
UNITED STATES BANKRUPTCY COURT
1415 STATE STREET
SANTA BARBARA, CA 93101

CARRINGTON MORTGAGE SERVICES, LLC
P.O. BOX 3549
ANAHEIM, CA 92803

CARRINGTON FORECLOSURE SERVICES, LLC
P.O. BOX 3309
ANAHEIM CA 92803

TAI ALAILIMA / DIRECTOR
TRUSTEE OPERATIONS
CARRINGTON FORECLOSURE SERVICES, LLC
SOUTH DOUGLAS RD, STE 140
ANAHEIM, CA 92806

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.
Page 2 of 2

June 2012

F 9013-3.1.PROOF.SERVICE