**FILED & ENTERED**

AUG 29 2025

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY Spann      DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>JOE ANGUS MCKENNA AND RUTH ALLISON MCKENNA,<br><br>Debtors. | CHAPTER 13<br><br>Case No.: 9:24-bk-10717-RC<br><br>**ORDER GRANTING IN PART, AND DENYING IN PART, MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** |

*Background* **[FN1]**

*The Property and Foreclosure Efforts*

In 2010, Joe McKenna and Ruth McKenna (jointly, the "Debtors"), obtained a loan secured by a deed of trust for real property located at 317 E Prune Avenue, Lompoc, CA 93436 (the "Property"). *See* Docket No. 30, *Supplemental Declaration of Olivia Reyes* (the "Reyes Declaration"), p. 8, lines 16-20. The Reyes Declaration provides that the Debtors "defaulted on the loan and foreclosure proceedings began in 2018." *See id.* at lines 21-22. The Reyes Declaration provides that Carrington Foreclosure Services ("Carrington"), the trustee for the deed of trust on the Property, began foreclosure proceedings and set a foreclosure sale date of August 8, 2018. *See id*. at lines 21-24.

/ / /

*The Debtors' Filing History*

On August 7, 2018, the Debtors filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.  *See* Case No. 9:18-bk-11288-DS (the "First Case"), Docket No. 1.  The First Case was dismissed for failure to file schedules, statements, and/or a plan on August 27, 2018, and was closed on October 12, 2018.  *See id.* at Docket Nos.10 and 15, respectively.

On October 16, 2018, the Debtors filed another voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.  *See* Case No. 9:18-bk-11695-DS (the "Second Case"), Docket No. 1.  The Second Case was dismissed on November 5, 2018, for failure to file schedules, statements, and/or a plan, and was closed on December 26, 2018.  *See id.* at Docket Nos. 10 and 14, respectively.

On December 26, 2018, the Debtors filed another voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.  *See* Case No. 9:18-bk-12114-DS (the "Third Case"), Docket No. 1.  The Third Case was dismissed on January 14, 2019, for failure to file schedules, statements, and/or a plan, and was closed on January 30, 2019.  *See id.* at Docket Nos. 10 and 14, respectively.

The Reyes Declaration provides that "[o]n February 15, 2024, [the Trustee] recorded a Notice of Default," and "then recorded a Notice of Trustee's Sale on May 29, 2024, setting a foreclosure sale date of June 26, 2024," and that "[t]he sale took place on June 26, 2024, at 1:49 pm []."  *See* Reyes Declaration, p. 9, lines 17-25.  However, the Reyes Declaration also provides that "[m]y business records indicate that [Hollyvale Rental Holdings, LLC ("Movant")] purchased the Property at approximately 1:55 P.M. on June 26, 2024, following a duly noticed and properly conducted non-judicial foreclosure sale []."  *See id.* at p. 8, lines 8-12.

On June 26, 2024, at 1:50:06 p.m., the Debtors filed a fourth voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.  *See* Case No. 9:24-bk-10717-RC ("This Case"), Docket No. 1.  **[FN2]** The Debtors filed no schedules and provided a handwritten list of two creditors – one of which was Carrington.  *See id*.  On July 29, 2024, This Case was dismissed for failure to file schedules, statements, and/or plan despite being granted an extension to file case commencement documents.  *See* Docket Nos. 9 and 12.  On August 9, 2024, This Case was closed.  *See* Docket No. 16.

On August 13, 2024, the Debtors filed a fifth voluntary petition for relief under Chapter 13 of Title 11 of the United States Code.  *See* Case No. 9:24-bk-10921-RC (the "Fifth Case"), Docket No. 1.  On August 16, 2024, Movant recorded against the Property that *Trustee's Deed Upon Sale* (the "Deed").  *See* Reyes Declaration, *Exhibit 1*.  The Fifth Case was dismissed on August 30, 2024, for failure to file schedules, statements, and/or plan, and was closed on September 12, 2024.  *See id.* at Docket Nos. 10 and 14, respectively.

On September 20, 2024, Movant commenced an unlawful detainer action against the Debtors in the Superior Court of California, County of Santa Barbara (the "UD Action").  *See id.* at *Exhibit 4*.  According to the Reyes Declaration, "[a]t no time did Movant have any notice of information that Debtors had filed bankruptcy in June 2024 and August 2024."  *See* Reyes Declaration, p. 10, lines 12-14.  The Reyes Declaration provides that at a settlement conference in the UD Action on January 15, 2025, the Debtors, "for the first time, informed Movant that they had filed a bankruptcy petition on June 26, 2024."  *See id.* at p. 11, lines 10-13.

On January 30, 2025, Movant filed that *Motion to Reopen Case* (the "Motion to Reopen") to reopen This Case "so that they may seek retroactive relief from the automatic stay and more specifically an order confirming that no stay was in effect at the time of the sale."  *See* Docket

-3-

No. 17, p. 2, lines 5-8.  A hearing was held on March 11, 2025, and on March 18, 2025, the Motion to Reopen was granted for the limited purpose of determining if the sale of the Property was conducted prior to, or after the petition in This Case was filed.  *See* Docket Nos. 25 and 28.

On March 5, 2025, the Debtors filed another voluntary petition for relief under Chapter 13 of Title 11 of the United States Code. *See* Case No. 9:25-bk-10292-RC (the "Sixth Case"), Docket No. 1. The Sixth Case was dismissed on March 24, 2025, for failure to file schedules, statements, and/or plan, and was closed on April 1, 2025.  *See id.* at Docket Nos. 8 and 12, respectively.

*The Motion*

Before the Court is that *Amended Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (with supporting declarations) (Real Property)* (the "Motion") filed by Movant.  *See* Docket No. 38.  On June 27, 2025, the Court held an evidentiary hearing on the Motion.  *See* Docket No. 46. **[FN3][FN4]**

Through the Motion, Movant seeks to lift the automatic stay in This Case pursuant to 11 U.S.C. § 362(d)(1) on the grounds that This Case was filed in bad faith, and because Movant lacks an adequate equity cushion in the Property to serve as adequate protection.  *See* Docket No. 38, p. 3.  Movant also argues that cause exists to lift the stay in that "[o]wnership transferred away from [the Debtors] pre-petition, on 6/26/2024, at a properly noticed and conducted non-judicial foreclosure sale."  *See* Docket No. 38-1, *Memorandum of Points and Authorities in Support of Motion for Relief from the Automatic Stay Under 11 USC Section 362*, p. 2, lines 10-11.  Movant further seeks relief under 11 U.S.C. § 362(d)(2), arguing that the Debtors "lost ownership of [the Property] on 6/26/2024, prepetition, following a properly noticed and conducted nonjudicial foreclosure sale."  *See id.* at lines 13-27.  Movant also seeks an annulment

-4-

of the automatic stay in that the Debtors have argued that the sale occurred post-petition. *See id.* at p. 3, lines 10-11. Movant lastly appears to seek stay relief in the Fifth, and perhaps the Sixth Case for their recording of the Deed. *See id.* at lines 13-17.

On April 9, 2025, the Debtors filed that *Response to Motion Regarding the Automatic Stay and Declaration(s) in Support* (the "Response"). *See* Docket No. 34. The Debtors argue through the Response, in opposition to the Motion, that they filed "their Ch13 bankruptcy petition before the foreclosure sale was completed. Movant admits that the foreclosure sale was completed at 1:55 PM on June 26, 2024. Debtors filed at 1:50 PM." *See id.* at p. 3.

As explained *infra*, the Court finds that Movant did not carry its burden to demonstrate that the Property was sold prior to the filing of This Case, but the Court will annul the automatic stay in This Case. However, the Court will not annul or grant relief from the automatic stay in the Fifth Case or in The Sixth Case, as a motion requesting the same must be filed in those cases.

*Jurisdiction*

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

*Analysis*

*Did the Property Constitute Property of the Debtors' Bankruptcy Estate in This Case?*

"Under federal bankruptcy law, 'a petition [for bankruptcy]… operates a stay [of] the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was … commenced before the commencement of the case under this title." *Porter v. Nabors Drilling USA, L.P.*, 854 F.3d 1057, 1061 (9th Cir. 2017)(citing 11 U.S.C. § 362(a)(1)). "The stay is self-executing and effective upon filing a bankruptcy petition." *Id.* (citing *In re Wardrobe*, 559 F.3d 932, 934 (9th Cir. 2009)). "The sweep of the automatic stay

is broad and 'serves as one of the most important protections in bankruptcy law.'" *Id.* (citing *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214 (9th Cir. 2002)).  The automatic stay "stops all collection efforts, all harassment, and all foreclosure actions." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992).

The Ninth Circuit has made it clear "that violations of the automatic stay are void, not voidable." *Id.*; *see also In re Sanders*, 198 B.R. 326, 328 (Bankr. S.D. Cal. 2012) ("…the foreclosure sale itself was conducted postpetition, albeit without knowledge of the bankruptcy filing.  Under federal law, the foreclosure sale was a void act because it was conducted postpetition, in violation of the automatic stay of 11 U.S.C. § 362."), and *In re Fjeldsted*, 293 B.R. 12, 20 (9th Cir. BAP 2003).  A post-petition foreclosure sale is void, and "later perfection [will] not validate it." *In re Mitchell*, 279 B.R. 839, 844 (9th Cir. 2002).

The burden of proof as to what constitutes property of the bankruptcy estate generally rests with the creditor.  *See In re Segal*, 532 B.R. 610 (Bankr. E.D. Pa. 2015).

Here, as an initial matter, Movant requests through the Motion, "[c]onfirmation that there is no stay in effect." *See* Docket No. 38, p. 5.  Invited differently, as to the foreclosure sale, confirmation that no stay "was" in effect when the sale took place.  The parties do not dispute that the foreclosure sale occurred on June 26, 2024.  The dispute surrounds whether the sale took place prior to, or after June 26, 2024, at 1:50:06 p.m., the date and time the Debtors' bankruptcy petition is time stamped.

Movant provides contradictory statements regarding the date and time that the foreclosure sale of the Property occurred.  It does not appear that Movant's declarant, Olivia Reyes ("Reyes") has personal knowledge of the sale other than what Movant's business records provide.  Reyes attests that "[m]y business records indicate that Movant purchased the Property

-6-

at approximately 1:55 PM on June 26, 2024…" *See* Reyes Declaration, p. 8, lines 8-13. It is unclear to the Court what these business records are comprised of. The Reyes Declaration includes an unsigned document from an unknown source, that provides that the "Sale Completed Time" was 1:49:00 p.m. *See id.* at *Exhibit 2*. That document is cited by Reyes for the proposition that the sale actually took place at 1:49 p.m. on June 26, 2024. *See id.* at p. 9, lines 21-23. Exhibit 8 to the Motion is a two-page document entitled *Receipt of Funds*. *See* Docket No. 38, *Exhibit 8*. The second page denotes a "TIME SOLD" of 1:49. *See id.* The Court has no understanding of what *Exhibit 8* is, or who created the document. The Court can only conclude on the record before it that Reyes has no understanding of when the sale in-fact concluded, other than the fact that it concluded at some point on June 26, 2024.

Curiously, the Motion does not contain a declaration of a party for Carrington or any of the eight (8) witnesses that *Exhibit 8* to the Motion seems to suggest participated in the sale. Assuming for the moment that *Exhibit 8* to the Motion is authentic, and was created at the time of the foreclosure sale, there are at least three (3) bidders identified by name, drivers license number, address and phone number. *See* Docket No. 38, *Exhibit 8*. One of those parties is Monica Castro (the name is not clearly legible, but it seems clear that the name is not Olivia Reyes), and at $400,000, that appears to be connected to Movant. Yet, no Monica Castro (or whomever is named on the sheet) submitted a declaration in support of the Motion as to the end time for the foreclosure sale.

The conflicting statements of Reyes as to the records of Movant regarding the time of the foreclosure sale, and the lack of any other credible evidence of said time prevent this Court from concluding when the foreclosure sale in-fact occurred, 1:49 p.m., or after 1:50:06 p.m., on June 26, 2024.

-7-

The Motion is denied to the extent it seeks an order confirming that the Property did not constitute property of the Debtors' estate as of the date of the filing of This Case.

*Modification of the Automatic Stay*

"The burden of proof on a motion to modify the automatic stay is a shifting one." *In re Plumberex Specialty Products, Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004)(citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2nd Cir. 1990)). "To obtain relief from the automatic stay, the party seeking relief must first establish a prime facie case that 'cause' exists for relief under § 362(d)(1)." *Id.* (internal citations omitted). "Once a prime facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." *Id.* "If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." *Id.*

11 U.S.C. § 362(d)(1) – Lack of Adequate Protection

Pursuant to 11 U.S.C. § 362(d)(1), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [] for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). While the term "adequate protection" is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value; 2) an additional or replacement lien on other property; or 3) other relief that provides the indubitable equivalent. *See In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). "Equity cushion" is defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect. *Id*. at 1397.

"Equity," as opposed to "equity cushion," is the value, above all secured claims against the property that can be realized from the sale of the property for the benefit of the unsecured creditors. *Id*.

"Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court." *Id*. (internal citations omitted). "In fact, it has been held that the existence of an equity cushion alone, can provide adequate protection." *Id*. (internal citations omitted). "A sufficient equity cushion has been found to exist although not a single mortgage payment had been made." *Id*. (internal citations omitted). "A 20% cushion has been held to be an adequate protection for a secured creditor." *Id*. at 1401. (internal citations omitted).

No analysis has been provided to support the request to grant relief for lack of adequate protection under 11 U.S.C. § 362(d)(1). For these reasons, the Motion is denied as to its request under 11 U.S.C. § 362(d)(1) insofar as it relates to lack of equity.

<u>11 U.S.C. § 362(d)(1) – Bad Faith</u>

"The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay." *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." *Id.* "The bankruptcy court should examine the debtor's financial status, motives, and the local economic environment." *Id.* The Ninth Circuit cited the Ninth Circuit Bankruptcy Appellate Panel regarding bad faith as follows: "If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to

put an end to long delays, administration expenses ... to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation ... good faith cannot be denied." *Id.*

"Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *Id.* (citing *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983) (quotation omitted).

Movant argues that This Case was filed in bad faith because the Debtors have filed other bankruptcy cases in which they asserted an interest in the Property. Movant further argues that the Debtors' bad faith is "evidenced by [the Debtors'] failure to file any schedules in either the June 2024 bankruptcy case, or the August 2024 bankruptcy case" as well as their "three 2018 bankruptcy filings, where they filed a shell bankruptcy the day before the foreclosure sale and did not file any schedules or participate in the bankruptcy proceedings in any way." *See* Reyes Declaration, pp. 11-12.

The Debtors argue that in or around February 2024, they "were approached by [Carriage Mortgage Services ("CMS")] about a possible loan modification" given their delinquencies on the underlying loan. *See* Docket No. 34, p. 9, lines 9-10. The Debtors claim that they were unaware of CMS's "dual tracking" of the Debtors' loan, meaning that CMS was moving forward with foreclosure efforts while at the same time engaging with the Debtors about a modification of the loan. *See id.* at lines 11-20. The Debtors claim that they were informed by a family friend, and attorney, that the foreclosure sale deprived the Debtors of the Property, making This Case of no use to them. *See id.* at p. 5, lines 7-11. The Debtors claim that they filed the Fifth Case at the advice of another lawyer, who disagreed with the family friend lawyer's view of the Debtors' rights to the Property. *See id.* at lines 11-19.

At the time of the filing of This Case, the Debtors had filed six (6) prior cases dating back to 1992. The most recent case was dismissed on January 14, 2019, more than five (5) years prior to This Case. According to the Debtors, between the years of 2020 and 2023, "[the Debtors] were having severe health issues, which negatively affected their income, and they fell behind on their mortgage payments." *See* Docket No. 34, p. 9, lines 1-3. The Debtors claim that their financial troubles only worsened in 2022 when one of their tenants stopped paying rent to them, ultimately taking a loss of $11,000. *See id.* at lines 3-8. According to the Debtors, they have been "greatly affected" by the pandemic, including physically, mentally, and financially. *See id.* at p. 10, lines 7-11. The Debtors filed This Case and their 2018 cases *pro se*.

The sole reason for filing This Case is clear; the Debtors sought to stave off the foreclosure sale of CMS of the Property. The Debtors have a history of utilizing bankruptcy as a tactic to stall the foreclosure efforts against the Property. In none of the six (6) Chapter 13 cases that the Debtors have filed since 2018, including This Case, have the Debtors ever made a serious attempt to advance the cases. The Debtors have not filed schedules or a plan in any of their Chapter 13 cases, and so parties-in-interest are unable to test whether the Debtors were ever even eligible for Chapter 13. The Court finds that the Debtors filed This Case in bad faith, and, coupled with the annulment of the stay, *infra*, finds cause to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

### 11 U.S.C. § 362(d)(2)

Pursuant to 11 U.S.C. § 362(d)(2), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay with respect to a stay of an act against property under subsection (a) of this section, if (A) the debtor does not have an

-11-

equity in such property and (B) such property is not necessary to an effective reorganization."

Similarly to the request that the Court lift the stay under 11 U.S.C. § 362(d)(1) for lack of adequate protection, no analysis has been provided to support the request to grant relief under 11 U.S.C. § 362(d)(2).  The Motion is denied as to its request that the Court lift the automatic stay pursuant to 11 U.S.C. § 362(d)(2).

### Annulment of the Stay

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by [] annulling [] such stay [] for cause."  11 U.S.C. § 362(d)(1).  "The general trend has been to focus on two factors in determining whether cause exists to annul the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor."  *In re Fjeldsted*, 293 B.R. at 24-25.  Courts also consider (1) the number of filings by the debtor, (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors, (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser, (4) the debtor's overall good faith (totality of circumstances test), (5) whether the debtor has complied, and is otherwise complying with the Bankruptcy Code and Rules, (6) the relative ease of restoring parties to the status quo ante, (7) the costs of annulment to debtors and creditors, (8) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct, (9) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief, (10) whether annulment of the stay will cause irreparable injury to the debtor, and (11) whether stay relief will promote judicial economy or other

Main Document    Page 13 of 19

efficiencies. *Id.* at 25.

Courts generally balance all these factors, but not all factors need to favor annulment. *See In re Chesley*, 2015 WL 845568 *1, 6-7 (9th Cir. BAP 2015) (upholding annulment after "debtor filed three skeletal bankruptcy cases, all of which were dismissed based on her failure to file documents and which were filed to prevent a foreclosure sale of the property," which implicated *Fjeldsted* factors one, two, and six).

### (1) Number of Filings

Here, prior to This Case, the Debtor had not filed a bankruptcy case in more than five (5) years. There have been successive filings since This Case was filed, but there had been a half-decade gap between the 2018 cases and This Case. Still, the reasons for the 2018 filings and This Case appear to have been similar, to stall CMS's foreclosure efforts. This factor seems to break slightly in favor of granting Movant's request.

### (2) Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors

Here, the Debtors filed This Case within minutes (either prior to or after) of the foreclosure sale. The filing of This Case was to delay CMS's foreclosure efforts. However, in terms of repeat filings, again, This Case followed the 2018 cases more than five (5) years afterwards, but, the motive seems to have been the same. This factor breaks in favor of granting the relief requested.

### (3) A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser

Here, there is prejudice and harm to a bona fide purchaser, Movant. Movant is not a

creditor of the Debtors, but instead purchased the Property at a non-judicial foreclosure sale without knowledge of This Case. Movant was forced to file the UD Action against the Debtors, is currently incurring costs, and is delayed in obtaining possession to the Property by This Case. Further, Movant asserts it is losing $98.33 per day due to the Debtors' occupancy of the Property and their failure to pay rent. There is certainly prejudice to Movant, and the presence of that prejudice favors annulment of the stay.

### (4) The Debtor's overall good faith (totality of circumstances test)

As stated *supra*, the Court does not find that the Debtors filed This Case in good faith. This factor weighs in favor of annulment.

### (5) Whether creditors knew of stay but nonetheless took action, thus compounding the problem

Movant was not aware of This Case when they engaged in the foreclosure sale and recorded the Deed. In fact, Movant claims it did not receive notice of the filing of This Case until months later in a settlement conference related to the UD Action after This Case was both dismissed and closed. It is also not clear that CMS was aware that This Case had been filed when the foreclosure sale was conducted. This factor weighs in favor of annulment.

### (6) Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules

The Debtors have not complied with the Bankruptcy Code and Rules. The Debtors failed to file schedules or a plan of reorganization. While the Debtors have stated some reasons for their noncompliance, the fact remains that they have failed to comply with the Bankruptcy Code and Rules. This factor weighs in favor of annulment.

/ / /

### (7) The relative ease of restoring parties to the status quo ante

Here, this factor weighs in favor of annulment because it is difficult to return Movant to the status quo ante. *See In re Khan*, 2019 U.S. Dist. LEXIS 227758, *24 (C.D. Cal. 2019). If the Court does not grant annulment, Movant's interest in the Property would cease, as the sale would be invalidated, and then Movant would be required to dismiss the UD Action against the Debtors and then attempt to unwind the sale to recover the purchase price. Further, Movant would be exposed to potential actions for violation of the automatic stay in This Case.

### (8) The costs of annulment to debtors and creditors

Here, if annulment is granted the Debtors will lose title and any claim to the Property. This cost is high to the Debtors to the extent that real property is unique, and the sentimental value the Debtors may have in the Property. That said, the Debtors claim that there exists hundreds of thousands of dollars in equity in the Property. *See* Docket No. 34, p. 2. So, while the Debtors would lose the Property with the approval of the Motion as to annulment, they claim to have $648,900 in equity in the Property, some or most of which they may be entitled to. This factor weighs in favor of granting annulment.

### (9) How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct

Here, Movant moved to reopen This Case shortly after learning of the stay and promptly filed the Motion to annul the stay. Movant acted quickly, whereas the Debtors did not promptly take action to set aside the sale. The Debtors failed to inform Movant for months of This Case, despite the ongoing UD Action. The Debtors have done nothing to set aside any violative conduct regarding the Property that the Court is aware of. This factor weighs in favor of annulment.

**(10)   Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief**

Here, Movant took prompt steps to gain relief and did not continue in violation of the stay. This factor weighs in favor of annulment.

**(11)   Whether annulment of the stay will cause irreparable injury to the debtor**

Annulment of the stay will cause the sale of the Property to be validated and the Debtors will have fully lost the Property. However, the Debtors' loss of the Property appears to be inevitable as the Property has been in foreclosure since 2018 and the Debtors do not appear to have any ability to recover or prevent foreclosure. What is more, as previously discussed, the Debtors claim $648,900 in equity in the Property, some or most of which they may be entitled to. Still, real property is unique, and the loss of the Property would be accompanied by a sentimental loss to the Debtors, even if the loss is a gain economically. This factor, at best, when viewed most favorably to the Debtors, weighs slightly against annulment, however, the Court finds the factor here is neutral due to likely foreclosure of the Property and the stated equity the Debtors enjoy in the Property.

**(12)   Whether stay relief will promote judicial economy or other efficiencies**

Here, annulment will promote judicial economy as it will likely prevent the Debtors from filing more petitions as a means of delay regarding Movant's efforts to obtain possession of the Property. This factor weighs in favor of annulment.

In sum, at least ten (10), if not eleven (11), of the twelve (12) factors weigh in favor of

-16-

annulling the stay to validate (or at least remove any doubt regarding) the sale. As such, the Court will annul the stay in This Case.

### *Fed. R. Bankr. P. 4001(a)(3)*

As to Fed. R. Bankr. P. 4001(a)(3), "'[t]he purpose of this provision is to permit a short period of time for the debtor or the party opposing relief to seek a stay pending an appeal of the order.'" *In re Sternitzky*, 635 B.R. 353, 361 (Bankr. W.D. Wis. 2021).  "The party obtaining relief from the automatic stay may persuade the court to grant a shorter time period for the debtor to seek a stay pending appeal, or even grant no time." *Id*.

No analysis has been provided to support the request to waive the stay, and so the Court declines to do so.

*Conclusion*

For the reasons provided herein, the Court orders as follows:

The Court denies the Motion's request that it determine that the foreclosure sale occurred pre-petition.

The Court denies the Motion insofar as it requests relief under 11 U.S.C. § 362(d)(1) regarding a lack of adequate protection, and 11 U.S.C. § 362(d)(2).

The Court grants the Motion's request under 11 U.S.C. § 362(d)(1) to (1) to lift the automatic stay for cause as to bad faith, and (2) annul the stay to the petition date for cause, any postpetition actions taken by Movant to enforce its remedies shall not constitute a violation of the stay.

///

///

///

Movant may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

All other relief requested in the Motion, to the extent not provided for herein, is denied.

###

Date: August 29, 2025

Ronald A. Clifford III
United States Bankruptcy Judge

**[FN1]** The following constitute the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as may be applicable to this matter through Fed. R. Bankr. P. 7052. Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding fact is hereby adopted as a finding of fact.

**[FN2]** Unless otherwise stated, all further references to the Docket refer to the case docket for This Case (case no. 9:24-bk-10717-RC).

**[FN3]** The Court held an evidentiary hearing on June 17, 2025, but Joe Mckenna failed to appear due to his allergies. The Court continued the matter to June 23, 2025, at the Debtors' request, but the Debtors failed to appear. However, attorney Rhonda Walker appeared on behalf of Ruth McKenna requesting a continuance to file a substitution of attorney, and to familiarize herself with This Case. The evidentiary hearing was continued to June 27, 2025. At the June 27, 2025, hearing neither the Debtors nor Rhonda Walker appeared.

**[FN4]** The Motion is an amendment to that *Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* filed on March 28, 2025. *See* Docket No. 30.